UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRINK'S INCORPORATED, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:14-CV-775-B |
| | § | |
| DANA PATRICK and ROBERT GRECO, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Brink's Incorporated's Supplemental Motion for Entry of Preliminary Injunction (doc. 23), filed April 9, 2014. For the reasons stated below, Plaintiff's Motion is hereby **GRANTED in part and DENIED in part**.

### I.

### BACKGROUND

This case arises out of two former employees' threatened violations of non-compete and confidentiality agreements. Brink's Incorporated (Brink's) is a provider of secure transport services and engages in the business of transporting, protecting, and storing coin currency, negotiable instruments, and other valuables. Doc. 11, Am. Compl. ¶ 7. It also provides ATM, smart safe, and money processing services. *Id.* Brink's hired Defendant Robert Greco in August 2005. Doc. 24, Moreau Decl. ¶ 3.[1] In June 2010, Greco was promoted to the position of Branch Manager in Brink's

---

[1]Although both Dana Patrick and Robert Greco are defendants in this action, only Greco opposes Brink's Supplemental Motion for Entry of Preliminary Injunction. Doc. 31, Def.'s Resp. This order therefore only addresses Brink's requested injunctive relief as it relates to Greco.

Chicago office, a position that was later reclassified as Senior Manager, Cash Logistics. *Id.* ¶ 4. In this position, Greco directed Brink's operations in the city of Chicago. *Id.* ¶¶ 4, 6. Greco worked as Senior Manager, Cash Logistics, until April 15, 2012, at which time he was promoted to the position of Area Director for the Central Region. *Id.* ¶ 5. Though he stayed in the Chicago office, Greco assumed responsibilities for work in many other parts of the country, overseeing Brink's operations in Peoria, Illinois; Rockford, Illinois; Springfield, Illinois; Davenport, Iowa; Urbana, Illinois; Minneapolis, Minnesota; Corpus Christi, Texas; San Antonio, Texas; Madison, Wisconsin; and Milwaukee, Wisconsin. *Id.* During his tenure at Brink's, Greco received access to and used Brink's confidential information, including customer names, contacts, volume of business and routes for customers, service specifications, service delivery strategies, and staffing and pricing models for Brink's armored transportation and ATM service lines. *Id.* ¶ 7.

On April 12, 2012, Greco executed a Confidentiality and Non-Competition Agreement with Brink's. Doc. 24, Greco Agreement Ex. 1-C. This agreement provided, in relevant part, that

> During my relationship with the Company and for a period of two (2) years thereafter, I will not, without express written consent of an authorized representative of the Company, (i) provide or perform services similar to those provided or performed by the Company within the Territory (as defined below) for any Competing Business . . . .

*Id.* ¶ 12(a). The Agreement further defined "Territory" as

> [T]he geographic area serviced by the Company office(s) to which I was last assigned or if my employment in such office(s) was for a period of less than two (2) years, the geographic area serviced by each Company office(s) to which I was assigned within the two (2) years preceding the termination of my employment with the Company.

*Id.* ¶ 12(d).

Greco resigned from his position as Area Director for the Central Region on December 31,

2013. Doc. 24, Moreau Decl. ¶ 5. Greco left to take a position at Garda, one of Brink's main competitors. Doc. 24, Greco Dep. Ex. 2, at 27-29, 62. Following Greco's departure, Brink's performed a forensics analysis of his work computer and discovered that, prior to resigning, Greco had transferred material from his computer to a thumb drive and had otherwise deleted all of the data from his computer using a commercial software program. Doc. 24, Moreau Decl. ¶ 10. After this litigation was instituted, Greco's counsel surrendered the thumb drive that Greco had taken, and an analysis revealed that it contained Confidential Information from Brink's, including a number of forms that Brink's had developed. *Id.* ¶¶ 10-11. It also showed that Greco had accessed some of this information since he began working for Garda. *Id.*

Brink's filed suit against Defendants Patrick and Greco in state court on February 11, 2014, alleging claims for violations of the Texas Uniform Trade Secrets Act, violations of the Computer Fraud and Abuse Act, and breach of contract. Doc. 1-5, Orig. Pet. Brink's also sought a temporary restraining order and injunction to prevent Defendants from working for Garda in any position in which they could or would use or disclose Brink's trade secrets or confidential information. *Id.* ¶¶ 80-82. At some point after this litigation was commenced, Greco's counsel informed Brink's that Greco would begin to perform work for Garda in its Chicago territory beginning on April 15, 2014. Doc 23, Pl.'s Br. 6. It also acknowledged that this work would be similar to the work he previously performed for Brink's in that territory. *Id.* Brink's insists that, should Greco begin to work in the Chicago area in such a capacity for Garda, he will violate the non-competition agreement he signed with Brink's. *Id.*

Soon after Brink's filed suit in state court, the parties agreed to the entry of an Agreed Temporary Restraining Order, which the state court entered on February 18, 2014. Doc. 1-9, Agreed

TRO Ex. 2. Defendants then removed the case to this Court on February 28, 2014, and on March 5, 2014, the parties filed another temporary restraining order in which Defendants agreed to make available all of their personal electronic devices for forensic analysis and to abstain from performing services similar to those they provided for Brink's within the geographic areas that they serviced for Brink's in the two years preceding their resignations. Doc. 8, Agreed TRO. The parties later extended the terms of the Temporary Restraining Order in an Agreed Preliminary Injunction. Doc. 16, Agreed Injunction. While Patrick agreed that, until January 4, 2016, she would not provide or perform services similar to those she provided to Brink's in the two years preceding her resignation for Garda or any competing business, Greco only agreed to abstain from providing such services until April 14, 2014. The parties later agreed to extend the Preliminary Injunction with regards to Greco until June 13, 2014, doc. 28, Agreed Injunction, and the Court later further extended the prohibitions in the Agreed Injunction on motion from the parties.

After various extension, the parties' Agreed Injunction will soon terminate according to its terms. Meanwhile, Brink's Supplemental Motion for Preliminary Injunction has now been fully briefed by the parties and is ripe for review.

## II.

## LEGAL STANDARD

To obtain a preliminary injunction, a plaintiff must show "(1) a substantial likelihood of success on the merits; (2) a substantial threat that it will suffer irreparable injury absent the injunction; (3) that the threatened injury outweighs any harm the injunction might cause the defendants; and (4) that the injunction will not impair the public interest." *Enrique Bernat F., S.A. v. Guadalajara, Inc.*, 210 F.3d 439, 442 (5th Cir. 2000). A preliminary injunction is considered an

"extraordinary and drastic remedy" and is not granted routinely, "but only when the movant, by a clear showing, carries the burden of persuasion" as to each of these four elements. *Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761, 772 (N.D. Tex. 2012).

III.

ANALYSIS

Brink's requests that the Court enter a preliminary injunction prohibiting Greco from performing services for Garda similar to those services he provided for Brink's in those areas to which he was assigned in the two years prior to his resignation, including Chicago. Doc. 23, Pl.'s Br. 11. Brink's asks that this injunction last until December 30, 2015. *Id.* Greco responds by arguing that the non-compete agreement that he signed with Brink's contains unreasonable restrictions in terms of time and geographic limitations, and therefore is unenforceable. Doc. 31, Def.'s Resp. 1-2. He further argues that Brink's fails to show that it will suffer irreparable harm absent a preliminary injunction. *Id.* Although Greco does not argue that Brink's cannot establish the other two elements of the preliminary injunction analysis, the Court will consider each of the four elements separately below.

As an initial matter, however, the Court first notes that Brink's asks it to grant a preliminary injunction "prohibiting Greco from performing services for Garda that are similar to those he provided for Brink's *until December 30, 2015.*" Doc. 23, Pl.'s Br. 11 (italics added). Brink's requests an injunction of similar length in its Amended Complaint. Doc. 11, Am. Compl., at 25. The length of the requested injunction is significant, because in asking for an injunction that will likely exceed the length of this litigation, Brink's is effectively asking not for a preliminary injunction, which is a "temporary injunction issued before or during trial to prevent an irreparable injury from occurring

- 5 -

before the court has a chance to decide the case," but for a permanent injunction, which is "an injunction granted after a final hearing on the merits . . . [such an injunction] does not necessarily last forever." BLACK'S LAW DICTIONARY 855 (9th ed. 2009). Brink's is therefore asking the Court to decide the ultimate question of whether the non-compete agreement prohibits Greco from providing services similar to those he provided to Brink's in the Chicago area until December 30, 2015, and to rule on the merits of its permanent injunction claim. The Court declines to make this determination at this point, however, because the parties have only addressed their arguments to Brink's entitlement to a preliminary injunction. Accordingly, the Court will only consider granting a preliminary injunction that will last until the Court is able to make a decision on the merits.

A. *Likelihood of Success on the Merits*

Brink's maintains that it will likely succeed on its claims that the non-compete agreement that Greco signed is enforceable and that Greco's work for Garda in the Chicago area would constitute a breach of that agreement. Greco responds by arguing that the agreement's terms are unreasonable, and therefore not enforceable.

Under Texas law, a covenant not to compete is enforceable if

(1) it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made; and (2) the limitations of time, geographical area, and scope of activity are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

*Digital Generation, Inc.*, 869 F. Supp. 2d at 774. The parties do not dispute that the non-compete agreement is ancillary to or part of an otherwise enforceable agreement. They instead focus their arguments on whether the limitations contained in the non-compete agreement are reasonable, and therefore whether the agreement is ultimately enforceable.

- 6 -

The Supreme Court of Texas has noted that "[t]he hallmark of enforcement is whether or not the covenant is reasonable." *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 777 (Tex. 2011). The court warned that, when determining the enforceability of a covenant, a court should not focus on "overly technical disputes" over whether a covenant is ancillary to an agreement, but should instead inquire "whether the covenant 'contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.'" *Id.* (citing TEX. BUS. & COM. CODE § 15.50(a)).

Brink's claims that the non-compete agreement that Greco signed contains reasonable limitations as to time, geography, and scope of activity such that it is enforceable under Texas law. Doc. 23, Pl.'s Br. 8. Brink's specifically maintains that the terms of the agreement, which prevents Greco from working for Garda in an identical capacity to the one he held in his former territories for two years following his resignation, is narrowly drawn and necessary to protect Brink's confidential information and goodwill. *Id.* at 5-7.

Greco contends that Brink's interpretation of the agreement, and the agreement itself, are unreasonable. Doc. 31, Def.'s Resp. 4. He argues that the terms of the non-compete agreement implicitly recognize that any information gained during an assignment to a territory would grow stale after two years. *Id.* at 5. Accordingly, it is unreasonable to read the agreement to preclude him from now working in Chicago, where he stopped supervising operations over two years ago. *Id.* Moreover, by interpreting the contract to prevent him from working in Chicago, Greco insists that the Court would effectively be enforcing an unreasonably long non-competition period of four years. *Id.*

The Court notes that the parties apparently do not disagree as to the plain meaning of the

non-compete agreement's terms. Brink's lays out the terms of the agreement, showing that it plainly prohibits Greco from providing services similar to those he provided to Brink's in the "Territory" (which includes any geographic area serviced by each office to which Greco was assigned in the two years before he resigned) for any competing business (including Garda) for a period of two years after his resignation. Doc. 23, Pl.'s Br. 9. In his response, Greco does not contend that Brink's interpretation of the non-compete provision is incorrect, only that it is unreasonable. Doc. 31, Def.'s Resp. 4-5. This argument speaks to the enforceability of the agreement, however, and not its meaning, and therefore the Court can reasonably infer that the parties do not part ways on the meaning of the terms. Additionally, even if the parties did disagree as to the meaning of these terms, Brink's interpretation reflects the plain meaning of the contract's terms, and is therefore controlling no matter what the agreement may or may not implicitly recognize. *Vincent v. Bank of America, N.A.*, 109 S.W.3d 856, 867 (Tex. App.–Dallas 2003, no pet.) (noting that, when a contract is unambiguous, "we do not ask about the subjective intent of the parties to the contract . . . [w]e simply apply the plain meaning of the contract language").

Even given the plain meaning of the contract's terms, Greco contends that Brink's insistence that he is prohibited from working in the Chicago area for two years following his resignation is unreasonable because it would effectively preclude him from working in the Chicago area for four years. Greco fails to cite any law to support his claims that such a restriction would be unreasonable, however, and fails to recognize that Texas courts have generally upheld non-compete periods ranging from two to five years as reasonable. *See, e.g.*, *Johnson Serv. Group, Inc. v. France*, 763 F. Supp. 2d 819, 826 (N.D. Tex. 2011) (noting that "two to five years has repeatedly been held as a reasonable time limitation") (citing *Gallagher Healthcare Ins. Services v. Vogelsang*, 312 S.W.3d 640, 655 (Tex.

App.–Houston [1st. Dist.] 2009, pet. denied) (upholding a covenant not to compete as reasonable that imposed a two-year restriction that prohibited a former employee from working with former clients with whom she worked for two years preceding her termination); *Salas v. Chris Christensen Systems Inc.*, No. 10-11-0107-CV, 2011 WL 4089999, at *19 (Tex. App.–Waco Sept. 14, 2011, no pet.) ("we cannot say that the Agreement's five-year restraint is per se unreasonable"); *Amey v. Barrera*, No. 13-01-0130-CV, 2004 WL 63588, at*6 (Tex. App.–Corpus Christ-Edinburgh Jan. 15, 2004, no pet.) (upholding a non-compete agreement that prohibited the defendant from working in "Corpus Christ and surrounding area for 5 years" as reasonable and enforceable). Thus, even if the agreement did effectively impose a four-year restriction, the Court cannot conclude that such a restriction would be unreasonable under Texas law. Furthermore, there is nothing in the record or the parties' briefs to suggest that such a restriction, which is clearly foreseen by the terms of the agreement, is unreasonable under the circumstances. Accordingly, the Court determines that Brink's will likely succeed in establishing that the time restriction in the non-compete agreement is reasonable.

Although Greco states that the "geographic restrictions" in the non-compete agreement are unreasonable, his brief focuses solely on the reasonableness of the two-year limitation on competition. Greco has therefore waived his argument that the geographic restrictions in the agreement are reasonable, but the Court notes that Texas courts have generally held that non-compete agreements that prevent an individual from performing similar services to those he provided in territories he previously worked in have generally been upheld. *See e.g., Johnson Serv. Grp., Inc.*, 763 F. Supp. 2d at 826 ("Texas courts have upheld geographical limitations preventing competition within a metropolitan area, as the 50–mile limitation essentially does here."); *Butler v. Arrow Mirror & Glass,*

*Inc.*, 51 S.W.3d 787, 794 (Tex. App.–Houston [1st. Dist.] 2001, no pet.) (upholding a reformed non-compete covenant that prohibited a former manager from working in those counties where he previously oversaw operations); *Propath Services, LLP v. Quest Diagnostics Clinical Laboratories, Inc.*, No. 3:00-CV-2391-H, 2002 WL 535056, at *10 (N.D. Tex. Apr. 9, 2002) (holding that a covenant which prohibited a party from acting in forty-eight Texas counties was not unreasonable because the defendants marketed the relevant services within those counties); *Daily Instruments Corp. v. Heidt*, No. H-13-2189, 2014 WL 710683, at *12 (S.D. Tex. Feb. 21, 2014) ("Geographic restrictions are reasonable to the extent they are commensurate with the territory in which the employee worked during his employment with the employer.").

Pursuant to the authority cited above, the Court concludes that the agreement's restrictions are likely to be deemed reasonable and do not impose a greater restraint than is necessary to protect Brink's business interests, including its goodwill and confidential information. *Marsh*, 354 S.W.3d at 774 (noting that goodwill, trade secrets, and confidential information are protectable business interests under TEX. BUS. & COM. CODE ANN. § 15.50(a)). It bears noting that the restrictions are relatively limited and still allow Greco to work in the same industry and to pursue a living by only preventing him from providing similar services to those he provided to Brink's within his former territory.[2] *Evans Consoles Inc. v. Hoffman Video Systems, Inc.*, No. 3:01-CV-1333-P, 2001 WL 36238982, at *8 (N.D. Tex. Dec. 6, 2001) ("One of the factors considered by courts in determining

---

[2]Brink's notes in its brief that while the language of the non-compete provisions in Greco's employment agreement would prevent Greco from providing any services to Garda that Brink's performs in his former territory, Brink's only seeks to enforce the covenant "to prevent Greco from performing the services he performed or provided to Brink's for a competitor within his former territory." Doc. 23, Pl.'s Br. 8. Accordingly, the Court will only enforce the non-compete agreement to the extent that Brink's requests.

the reasonableness of an agreement is whether the defendant is restricted from earning a living if the agreement not to compete is enforced."). The Court therefore concludes that the non-compete agreement is enforceable and that there is a substantial likelihood that Brink's will prevail on its breach of contract claim against Greco.

B. *Irreparable Harm*

The parties also disagree as to whether Brink's has shown a substantial threat of irreparable harm such that it is entitled to injunctive relief. Brink's argues that the evidence it submits to show that Greco stole confidential information and that Garda seeks to employ him in a position similar to the one he held at Brink's is sufficient to show that there is a substantial threat that it will experience irreparable harm if no injunction is granted. Doc. 34, Pl.'s Reply 8. It also asserts that the fact that Greco will violate his non-compete agreement necessarily establishes irreparable harm. *Id.* at 9.

Greco responds by arguing that while Brink's claims that Greco has taken forms, it has not described these forms, their purpose, why they are entitled to protection, or how Greco might use them in his position at Garda. Doc. 31, Def.'s Resp. 6-7. Consequently, Greco maintains, Brink's has failed to show that the alleged use of these forms would cause irreparable harm. *Id.* at 7. Additionally, Greco argues that any of the other damages that Brink's alleges are easy to quantify and therefore do not constitute irreparable injuries. *Id.*

In order to establish that there is a substantial threat of irreparable injury, Brink's must show "a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm." *TRAVELHOST, Inc. v. Figg*, No. 3:11-CV-0455-D, 2011 WL 6009096, at *4 (N.D. Tex. Nov. 22, 2011). This is a heavy burden to overcome, and mere

speculative injury will not suffice. *Id.* "While courts are willing to entertain a loss of customers or goodwill as a harm, the movant must come forward with evidence that such an injury is irreparable by showing that the loss cannot be measured in money damages." *Digital Generation, Inc.*, 869 F. Supp. 2d at 778.

The Court must first note that Brink's may not avoid the necessity of showing irreparable harm merely by claiming that Greco will violate his non-compete agreement. Brink's makes the conclusory assertion that "there is a substantial likelihood that Brink's will suffer irreparable injury through Greco's violating the Greco agreement's non-competition provisions." Doc. 23, Pl.'s Br. 10. In support of this assertion, Brink's cites *Oxford Global Res., Inc. v. Weekley-Cessnun*, No. 3:04-CV-0330-M, 2005 WL 350580, at *6 (N.D. Tex. Feb. 8, 2005) in which the court held that "[t]here is a substantial likelihood that Oxford would suffer irreparable injury through the Former Employees' violation of valid nonsolicitation clauses." To the extent that Brink's is arguing that because it is seeking an injunction to prevent a breach of Greco's non-compete agreement it does not need to show irreparable harm, numerous Texas courts, including this Court, have rejected this argument when considering whether to grant a preliminary injunction. *Travelhost*, 2011 WL 6009096, at *2 (collecting cases). Brink's must therefore submit evidence and carry its burden to demonstrate that there is a substantial threat that it will experience irreparable harm, regardless of whether it alleges that Greco will violate his non-compete agreement. *Id.*

But while Brink's may not be able to merely claim breach of a non-compete agreement and escape the requirement of showing irreparable harm, it may be able to carry its burden by submitting evidence to show an inevitable breach of a non-compete agreement. Indeed, many federal courts in Texas have held that harm arising out of a breach of non-compete  covenants is the "epitome of

irreparable injury." *See American Exp. Financial Advisors, Inc. v. Scott*, 955 F. Supp. 688, 693 (N.D. Tex. 1996); *Amerispec, Inc. v. Metro Inspection Serv., Inc.*, No. 3:01-CV-0946-D, 2001 WL 770999, at *6 (N.D. Tex. July 3, 2001); *Oxford*, 2005 WL 350580, at *6; *A&A Global Industries, Inc. v. Wolfe*, No. 3:01-CV-1515-D, 2001 WL 1388020, at *5 (N.D. Tex. Nov. 6, 2001). *See also Transparent Translations, Inc. v. Leslie*, 594 F. Supp. 2d 742, 757 (S.D. Tex. 2009) ("The use of an employer's confidential information and the possible loss of customers is sufficient to establish irreparable harm."). Furthermore, the parties themselves apparently recognized the serious harm that the breach of the non-compete agreement could cause, because Greco expressly agreed in his Confidentiality and Non-Competition Agreement that Brink's would have the right to a preliminary injunction in order to enforce the non-competition provisions. Doc. 23, Greco Agreement Ex. 1-5 ¶ 15; *see also Amerispec, Inc.*, 2001 WL 770999, at *6.

The Court concludes that Brink's has submitted sufficient evidence here to demonstrate a substantial threat of irreparable injury. Specifically, Brink's has submitted evidence to show that the responsibilities of Greco's position at Garda are similar to those he previously held at Brink's. Docs. 24, Job Summary Ex. 1-A; Greco Dep. Ex. 2, at 27-28. By assuming these responsibilities in the Chicago area, Greco will inevitably violate the express terms of the non-compete agreement, which prevent him from providing similar services to a competitor within the Territory that he previously serviced for Brink's. Furthermore, the fact that Greco undisputedly took confidential information from Brink's in his move to Garda, and that he is intimately familiar with Brink's procedures, services, and customer base in the Chicago area, are sufficient to establish that such a breach of the non-compete provision will likely lead to harm that is both imminent and hard to quantify. *See, e.g., TransPerfect Translations*, 594 F. Supp. 2d at 757 ("Where there is a high degree of similarity between

the employee's former and future employer, it becomes likely, although not certain, that the former's confidential information will be used and disclosed in the course of his work."); *Oxford*, 2005 WL 350580, at *6 ("[I]f Obert continues to violate valid nonsolicitation covenants, he will injure Oxford on an ongoing basis in ways that are difficult to verify, quantify, and rectify.").[3]

This holding does not conflict with the conclusion in *Digital Generation*, upon which Greco relies. In that case, the court concluded that an employer failed to show irreparable harm when it merely alleged that a former employee could potentially take the former employer's customers or exploit his knowledge of the former employer. 869 F. Supp. 2d at 778. Significantly, the Court in *Digital Generation* reached its conclusion based on the fact that the employer "failed to adduce any evidence, in the form of affidavits or otherwise, demonstrating why the loss of customers and goodwill would result in irreparable harm." *Id.* at 777-78. Additionally, there was no evidence properly presented before the court to show that the employee had violated or would violate the non-compete agreement, and the agreement only prohibited the employee from contacting former clients rather than from working in a specific area. *Id.* at 767-78, 771. Here, by contrast, Brink's has submitted sufficient evidence to show that Greco will inevitably violate the terms of his non-compete agreement without an injunction because his responsibilities at Garda will very likely overlap with those he had when assigned to work in Chicago for Brink's. This threatened breach poses a

---

[3] While Greco is correct in pointing out that Brink's fails to show how the forms that he took are valuable or how Greco might use them when working in the Chicago office, such omissions do not alter the Court's conclusion because it is clear that the forms were at least valuable enough that Greco chose to use them after relocating to Garda. Docs. 24, Moreau Decl. ¶ 11; 24, Greco Dep. Ex. 2, at 122-125. Moreover, no matter what the inherent value of these forms is, Greco's use of the forms only further demonstrates that his responsibilities at Garda overlap with those he held at Brink's and therefore lends additional support to the conclusion that his inevitable breach of the non-competition provisions will entail the use of Brink's processes and confidential information, therefore posing a substantial threat of irreparable harm.

substantial threat of harm that is difficult to verify or quantify, *see Oxford*, 2005 WL 350580, at *6, and therefore Brink's has met its burden of demonstrating irreparable harm.

### C. The Threatened Injury Outweighs Any Harm the Injunction May Cause

Based on the evidence in the record, the Court concludes that the threatened injury to Brink's outweighs any potential harm that the injunction will cause to Greco. As noted, Brink's has demonstrated a substantial likelihood that it will suffer irreparable injury absent injunctive relief. Greco, on the other hand, will be allowed to pursue his living and provide services to Garda similar to those he provided to Brink's, except for in those areas covered by the non-compete agreement, including Chicago. He can also provide services to Garda in the Chicago area that are not similar to those he previously provided to Brink's. Accordingly, the balance of harms under such circumstances favors Brink's, and Brink's has therefore met its burden to establish the third element of the preliminary injunction analysis. *See, e.g.*, *Oxford*, 2005 WL 350580, at *6 (concluding that the balance of interests favored employer when employee could still solicit business from new customers, although he was preliminarily enjoined from pursuing former customers); *Evans Consoles, Inc.*, 2001 WL 36238982, at *10 (noting that harm that an employee incurred due to a preliminary injunction, which prevented the employee from working in six states for the non-competition period of three years, did not outweigh the harm to his former employer in terms of lost goodwill and business).

### D. The Requested Injunction Will Not Impair the Public Interest

Finally, the Court holds that granting the requested injunction will not disserve the public interest. As this Court has noted on other occasions, it is in the public interest to uphold contracts and to enforce valid non-compete agreements. *AmeriSpec, Inc.*, 2001 WL 770999, at *6.

### IV.

CONCLUSION

For the reasons stated above, Plaintiff Brink's Incorporated's Supplemental Motion for Entry of Preliminary Injunction (doc. 23) is **GRANTED in part and DENIED in part**. Defendant Greco is enjoined from providing or performing services for Garda similar to those he provided or performed for Brink's within those geographic areas serviced by the offices to which he was assigned during the two years preceding the termination of his employment with Brink's, including the Chicago area. As noted above, however, this injunction will not extend until December 30, 2015, but will only extend until the Court has the opportunity to rule on the merits of this case, at which time Brink's can move for a permanent injunction. Finally, all of the other terms of the Agreed Preliminary Injunction, including those relating to Defendant Dana Patrick, remain unchanged.

**SO ORDERED.**

**SIGNED: June 26th, 2014**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

- 16 -